UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GREGORY PIERRE MATTHEWS,

                Petitioner,

v.

BECKY CARL,

                Respondent.

_____/

Case No. 1:22-cv-566

Honorable Paul L. Maloney

## **OPINION**

    This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Gregory Pierre Matthews is incarcerated with the Michigan Department of Corrections at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. On November 18, 2015, following a three-day jury trial in the Kent County Circuit Court, Petitioner was convicted of armed robbery, in violation of Mich. Comp. Laws § 750.529, being a felon in possession of a firearm (felon-in-possession), in violation of Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On December 22, 2015, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to prison terms of 35 to 60 years for the armed robbery and felon-in-possession convictions, to be served consecutively to a sentence of 2 years for felony-firearm.

    On June 19, 2022, Petitioner, represented by counsel, filed his habeas corpus petition raising four grounds for relief, as follows:

    I.      Mr. Matthews was denied his constitutional right to present a defense by the trial court's ruling suppressing two alibi witnesses. The Michigan Court

of Appeals decision to the contrary was objectively unreasonable based on the circumstances of this case.

II.    Mr. Matthews received constitutionally ineffective assistance of trial counsel and habeas relief is appropriate based on the following: (A) failing to file a motion to quash or pursue an interlocutory appeal; (B) failure to challenge the validity of the complaint; (C) failed to investigate and file a timely alibi notice; (D) failure to move for an adjournment; (E) failure to communicate until the week prior to trial; and (F) denial of counsel at a critical stage.

III.   Mr. Matthews received ineffective assistance of appellate counsel.

IV.    If this Court finds that the record is insufficient to determine counsel's ineffectiveness[,] then it should hold an evidentiary hearing.

(Pet., ECF No. 1, PageID.7.) Moreover, in his memorandum supporting his § 2254 petition, Petitioner asserts a claim that trial counsel was ineffective for failing to object to the prosecution's late amendment of the fourth-offense habitual offender notice. (Mem. Supp. § 2254 Pet., ECF No. 8, PageID.76.) Respondent contends that Petitioner's grounds for relief are meritless.[1] (ECF No. 9.) For the following reasons, the Court concludes that Petitioner's claim that trial counsel was ineffective for failing to object to the prosecution's late amendment of the fourth-offense habitual offender notice sets forth a meritorious ground for federal habeas relief. The Court, therefore, will

---

[1] Respondent also contends that ground I is procedurally defaulted, and that Petitioner has abandoned three of his subclaims of ineffective assistance of counsel. (ECF No. 9, PageID.151–152.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

grant Petitioner's petition with respect to that claim. The Court will deny Petitioner's petition with

respect to all other grounds for relief.

## Discussion

### I.      Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as

follows:

> According to the evidence introduced at trial, on the morning of September 28,
> 2014, William Kirkland, who was wearing a white shirt, was approached by
> [Petitioner], who was wearing a black hooded sweatshirt. [Petitioner] pointed a gun
> at Kirkland and told Kirkland to hand over his "stuff" and money. Kirkland, who
> was scared, threw a Rolex watch and a pair of Cartier glasses, which he had bought
> just two days earlier after winning some money in a poker game, on the ground.
> [Petitioner] picked up the items and, following a 15-minute argument with
> Kirkland, walked to a gray minivan and drove away.

*People v. Matthews*, No. 331177, 2017 WL 2988931, at *1 (Mich. Ct. App. July 13, 2017).

Jury selection for Petitioner's trial began on November 16, 2015. (Trial Tr. I, ECF No.

10-4.) Over the course of the next two days, the jury heard testimony from Kirkland, three women

who witnessed the robbery, law enforcement officers, and Petitioner's girlfriend at the time. (Trial

Tr. II and III, ECF Nos. 10-5 and 10-6.) On November 18, 2015, after about four hours of

deliberation, the jury reached a guilty verdict. (Trial Tr. III, ECF No. 10-6, PageID.409–410.)

Petitioner appeared before the trial court for sentencing on November 22, 2015. (ECF No. 10-7.)

Petitioner, with the assistance of appellate counsel, appealed his convictions and sentence

to the Michigan Court of Appeals, raising the following four claims for relief: (1) Petitioner was

denied the right to present a defense when the trial court suppressed two witnesses from presenting

an alibi defense; (2) the jury's verdict finding Petitioner guilty of armed robbery is against the

great weight of the evidence; (3) there was insufficient evidence to support the bindover to circuit

court, and counsel was ineffective for failing to either file a motion to quash or pursue an

3

interlocutory appeal; and (4) the trial court imposed an unreasonable sentence without providing explanation. (ECF No. 10-10, PageID.525.) Petitioner also filed a Standard 4 brief, raising several claims of ineffective assistance of counsel. (*Id.*, PageID.579.) On July 13, 2017, the court of appeals affirmed Petitioner's convictions and sentences. *Matthews*, 2017 WL 2988931, at *1. On November 26, 2019, the Michigan Supreme Court denied Petitioner's application for leave to appeal. *See People v. Matthews*, 935 N.W.2d 319 (Mich. 2019).

Petitioner subsequently filed a *pro se* motion for relief from judgment pursuant to Michigan Court Rule 6.500 in the trial court. (ECF No. 10-8.) In that motion, Petitioner raised numerous claims of ineffective assistance of trial counsel, a claim of ineffective assistance of appellate counsel, and a claim that his due process rights were violated when two felony charges were included in an amended information/indictment and when the supplemental information was amended to include a prior felony conviction that had not been included in the original information/indictment. (*Id.*, PageID.419–420.) The trial court denied Petitioner's motion in an opinion and order filed on August 20, 2021. (ECF No. 10-9.) The Michigan Court of Appeals and Michigan Supreme Court denied Petitioner leave to appeal on February 17, 2022, and May 31, 2022, respectively. (ECF No. 10-12, PageID.903; ECF No. 10-13, PageID.960.) This § 2254 petition followed.

## II.    Request for an Evidentiary Hearing

As a fourth ground for relief, Petitioner contends that this Court should hold an evidentiary hearing. (Pet., ECF No. 1, PageID.7.) Generally, habeas corpus actions are determined on the basis of the record made in the state court. *See* Rule 8, Rules Governing § 2254 Cases. The presentation of new evidence at an evidentiary hearing in the district court is not mandatory unless one of the circumstances listed in 28 U.S.C. § 2254(e)(2) is present. *See Sanders v. Freeman*, 221 F.3d 846,

852 (6th Cir. 2000). The Sixth Circuit Court of Appeals recently reviewed the requirements of the statute:

> As the Supreme Court recently recognized, [the Antiterrorism and Effective Death Penalty Act] "restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop* [*v. Twyford*], 142 S. Ct. [2037,] 2043 [(2022)]. Specifically, the statute allows the development of new evidence in "two quite limited situations": (1) when the claim relies on a "new" and "previously unavailable" "rule of constitutional law" made retroactive by the Supreme Court, or (2) when the claim relies on a "factual predicate that could not have been previously discovered through the exercise of due diligence." *Id.* at 2044 (quoting 28 U.S.C. § 2254(e)(2)). And even if a prisoner can satisfy either of those exceptions, to obtain an evidentiary hearing, he still must show by "clear and convincing evidence" that "no reasonable factfinder" would have convicted him of the crime charged. *Shinn* [*v. Ramirez*], 142 S. Ct. [1718,] 1734 [(2022)] (quoting 28 U.S.C. § 2245(e)(2)(A)(i), (ii)). Mammone does not purport to satisfy any of these stringent requirements for obtaining discovery or an evidentiary hearing: he does not rely on a new rule of constitutional law, he does not contend that the factual predicate for his constitutional claims could not have been previously discovered, and he points to no clear and convincing evidence that would cast doubt on the jury's verdict.

*Mammone v. Jenkins*, 49 F.4th 1026, 1058–59 (6th Cir. 2022).

Petitioner, like Mammone, does not rely upon any new rule of constitutional law, nor does his claim rely on a factual predicate that could not have been previously discovered through the exercise of due diligence. Moreover, even if Petitioner cleared those hurdles, he does not show by any evidence, much less clear and convincing evidence, that no reasonable factfinder would have convicted him. Under these circumstances, there is no basis to hold an evidentiary hearing. Accordingly, Petitioner's request for a hearing, characterized as a fourth ground for relief, will be denied.[2]

---

[2] To the extent that Petitioner contends that the trial court erred by not holding an evidentiary hearing regarding Petitioner's claims of ineffective assistance, such a claim is not cognizable on federal habeas review. *See Simpson v. Jones*, 238 F.3d 399, 406–07 (6th Cir. 2000) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Smith v. Phillips*, 455 U.S. 209, 221 (1982)). In addition, "the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 246–47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)). "[T]he traditional function of the writ is to secure release from illegal custody," *Preiser v.*

III.    **AEDPA Standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the

---

*Rodriguez*, 411 U.S. 475, 484 (1973), but a due process claim with respect to post-conviction proceedings, even if resolved in Petitioner's favor, would not impact Petitioner's custody. In reviewing such a claim, the Court "would not be reviewing any matter directly pertaining to" that custody. *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247). If this Court were to conclude that the trial court erred in denying Petitioner's request for an evidentiary hearing, Petitioner would not automatically be released from custody or be granted a new trial.

merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d

652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV. Discussion

### A. Ground I—Suppression of Alibi Witnesses

In his first ground for relief, Petitioner contends that the trial court denied him his right to present a defense by suppressing two alibi witnesses. (Pet., ECF No. 1, PageID.7.) The record reflects that on the first day of trial, prior to jury selection, trial counsel informed the court that Petitioner wanted to call Diana Babaan and Lisa Matthews as alibi witnesses. (Trial Tr. I, ECF No. 10-4, PageID.292.) Counsel represented that Babaan would testify that she gave Petitioner a ride to his mother's house during the time of the robbery. (*Id.*) Counsel represented that Matthews,

Petitioner's mother, would testify that Petitioner was dropped off at her house and that he routinely came to her house between 8:00 a.m. and 9:00 a.m. every morning to give her medicine. (*Id.*)

Counsel stated that he had learned about Babaan "within the last three or four days." (*Id.*) He asserted that he did not learn about Matthews until that time as well. (*Id.*) Counsel noted that Petitioner averred that he informed counsel about these alibi witnesses "months ago." (*Id.*) Counsel noted that he had a letter from Petitioner "dated September 27th, indicating all of the defenses he wanted, [in] which he did not mention these witnesses." (*Id.*) The trial court ruled that testimony from Babaan and Matthews would be precluded because Petitioner had not given the required notice. (*Id.*)

On the third day of trial, after the case went to the jury, Petitioner again raised the issue that Babaan would have testified to dropping Petitioner off at his mother's house on the morning of the robbery. (Trial Tr. III, ECF No. 406–407.) Petitioner referenced a "miscommunication" between himself and counsel. (*Id.*, PageID.407.) He represented that he knew about Babaan's existence "forever." (*Id.*) The court noted that it had received a letter from Petitioner in August in which Petitioner "listed a variety of complaints and issues concerning [his] attorney." (*Id.*, PageID.408.) Notably, however, that letter did not mention that Petitioner had an alibi and did not mention anything regarding Babaan or Matthews. (*Id.*) The court noted that it was in recess, at which time Petitioner twice stated that he had proof that he gave counsel information regarding his alibi witnesses "prior to this," referring to trial. (*Id.*, PageID.409.)

Petitioner raised this claim on direct appeal, and the court of appeals rejected it in a thorough discussion, stating:

> On appeal, [Petitioner] argues that the trial court erred in precluding his two alibi witnesses from testifying at trial. In particular, on the first day of trial, [Petitioner] identified Diana Babaan as an alibi witness who would testify that she drove [Petitioner] to his mother's house on the morning of the robbery. [Petitioner] also

indicated that he wished to call his mother to testify that [Petitioner] had been dropped off at her house that morning. However, given that [Petitioner] had known of these witnesses since the date of the robbery, the trial court reasoned that [Petitioner's] failure to file a timely notice of alibi warranted the exclusion of the proposed witnesses.

We review a trial court's decision to exclude alibi testimony for the failure to provide a timely notice of alibi for an abuse of discretion. *People v. Travis*, 443 Mich. 668, 679–680; 505 N.W.2d 563 (1993). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v. Unger*, 278 Mich. App. 210, 217; 749 N.W.2d 272 (2008).

Under MCL 768.20(1), a defendant must give advanced, written notice of an alibi defense. Specifically, MCL 768.20(1) provides that a defendant "shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case, or at such other time as the court directs, file and serve" on the prosecutor a written notice of alibi. There is no dispute that [Petitioner] failed to comply with MCL 768.20(1).

The sanction for a defendant's failure to file and serve the required notice of alibi is set forth in MCL 768.21(1): "[i]f the defendant fails to file and serve the written notice prescribed in [MCL 768.20], the court shall exclude evidence offered by the defendant for the purpose of establishing an alibi . . . ." However, the sanction of exclusion for a defendant's failure to file the required notice is not mandatory. *Travis*, 443 Mich. at 677–679. Rather, a trial court retains discretion to allow alibi witnesses, who were not properly disclosed, to testify. *Id.* Indeed, preclusion is considered an extreme sanction limited to "an egregious case." *People v. Merritt*, 396 Mich. 67, 82; 238 N.W.2d 31 (1976). When reviewing a trial court's decision, we judge the trial court's exercise of its discretion by considering the following factors:

> (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors arising out of the circumstances of the case. [*Travis*, 443 Mich. at 682–683 (quotation marks and citation omitted).]

In this case, [Petitioner's] failure to disclose his alibi witnesses prejudiced the prosecutor. Because [Petitioner] did not disclose his alibi witnesses to the prosecutor until the first day of trial, the prosecutor never had an opportunity to interview the witnesses and to investigate their potential testimony. The reason for the delayed disclosure was that [Petitioner] did not inform defense counsel of the alibi witnesses until four days before trial, even though [Petitioner] had more than 11 months—a period in which trial was adjourned two times—to tell defense counsel about the witnesses. [Petitioner] had a "duty to be candid and forthcoming with [his] lawyer," *Taylor v. Illinois*, 484 U.S. 400, 418; 108 S.Ct. 646; 98 L.Ed.2d

798 (1988); and his failure to share his alibi information with counsel is particularly striking given that, according to his attorney, [Petitioner] wrote counsel a letter, "indicating all of the defenses he wanted," but [Petitioner] did not mention his alibi witnesses. Similarly, months before trial, [Petitioner] wrote a letter to the trial court, offering a variety of challenges to the evidence against him, but again failing to mention his alibi witnesses. Yet, [Petitioner] admitted at trial that he had known of the witnesses since the date of the offense. In these circumstances, [Petitioner's] decision not to disclose information that was in his possession does not provide a good reason for failing to file a timely notice of alibi. No subsequent events mitigated the prejudice to the prosecutor. Although [Petitioner] now claims that any prejudice could have been alleviated by a "brief delay" to give the prosecutor time to interview the alibi witnesses, [Petitioner] did not request a continuance on the first day of trial. The longstanding rule of this state is that, absent a request for a continuance, a trial court should assume that a party does not desire a continuance. *People v. Elston*, 462 Mich. 751, 764; 614 N.W.2d 595 (2000).

In terms of the other properly admitted evidence, there was substantial evidence of [Petitioner's] guilt. Kirkland, who was acquainted with [Petitioner], identified [Petitioner] in a "photo show" and testified at trial that [Petitioner], wearing a black hooded sweatshirt, stole his watch and glasses at gunpoint in a parking lot on Christie Avenue. In addition to Kirkland's testimony, Anne Mikaya and Jacqueline Ruffin, who lived in separate residences on Christie Avenue, testified that on September 28, 2014, they were woken by an argument outside. Each woman looked out a window and saw a man, dressed in black clothes, with a gun. Mikaya saw the man point the gun at the other man, who was wearing a white shirt. Ruffin woke her daughter-in-law, Constance Coleman, and when Coleman looked out a window, she also saw a man, wearing black clothes, pointing a gun at a man, who was wearing a white shirt. Officer Zachary Smigiel testified that Kirkland was wearing a white shirt on the day of the robbery. It is true that Kirkland's stolen watch and glasses were never found and that the police did not find a black hooded sweatshirt, a gun, or the gray minivan. However, [Petitioner] attempted to evade arrest by hiding in a pile of clothing; and, soon after he was arrested, [Petitioner] told someone over the phone that he "just fucked up so bad."

Considering the relevant factors, we conclude that the trial court did not abuse its discretion by precluding [Petitioner's] alibi witnesses from testifying. *Travis*, 443 Mich. at 680, 682. Where [Petitioner] had no good reason for not making a timely disclosure of the witnesses and the prosecutor was prejudiced by the failure to disclose, the trial court's decision did not fall outside the range of reasonable and principled outcomes. See *Unger*, 278 Mich. App. at 217.

With respect to his proposed alibi defense, [Petitioner] also raises a constitutional challenge on appeal, arguing that he was denied his right to present a defense when the trial court precluded his alibi witnesses from testifying. Because defendant did not raise this argument below, it is unpreserved. *People v. Solloway*, 316 Mich. App. 174, 197; 891 N.W.2d 255 (2016). We review unpreserved claims of

11

constitutional error for plain error affecting the defendant's substantial rights. *People v. Carines*, 460 Mich. 750, 763–764; 597 N.W.2d 130 (1999).

A defendant has a constitutional right to present a defense. *People v. Hayes*, 421 Mich. 271, 278; 364 N.W.2d 635 (1984). However, the right is not absolute. *People v. Yost*, 278 Mich. App. 341, 379; 749 N.W.2d 753 (2008). In presenting a defense, a defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302; 93 S.Ct. 1038; 35 L.Ed.2d 297 (1973). "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Unger*, 278 Mich. App. at 250 (citation omitted). MCL 768.20 is an established rule of procedure, see *Travis*, 443 Mich. at 675, and it was clearly designed to ensure fairness and reliability in the ascertainment of guilt and innocence by preventing the wrongful use of an alibi defense and by allowing the prosecution time and information to investigate the merits of such a defense. See *id.* at 675–676; *Merritt*, 396 Mich. at 77. Moreover, the notice requirement, and the exclusion of witnesses for failing to comply, is neither arbitrary nor disproportionate. The statutory provisions merely represent "reasonable conditions" aimed at protecting against "an eleventh-hour" alibi defense. *People v. Jackson*, 71 Mich. App. 395, 398–399; 249 N.W.2d 132 (1976); *see also Taylor*, 484 U.S. at 411–414 & n 17. Given [Petitioner's] failure to comply with MCL 768.20, on the facts of this case, the trial court's exclusion of eleventh hour alibi witnesses did not violate [Petitioner's] right to present a defense. There was no plain error. *Carines*, 460 Mich. at 763–764.

*Matthews*, 2017 WL 2988931, at *1–3.

As an initial matter, to the extent that Petitioner asserts that the state courts erred in excluding his alibi witnesses under state law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state

conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68.

Even an axiomatically correct determination that testimony was admissible or inadmissible under state law does not preclude a determination that the admission or exclusion of the evidence was so fundamentally unfair that it violated the right to due process. "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach affords the state courts wide latitude for ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, a federal court may not grant relief if it would have decided the evidentiary question differently. A federal court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law, or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "'a Supreme Court case establishing a due process right with regard to the specific kind of evidence' at issue"). As set forth above, Petitioner contends that the suppression of his alibi witnesses violated his due process right to present a defense.

It is well established that a criminal defendant has the right to "a meaningful opportunity to present a defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *see also Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). As the Supreme Court has explained:

> The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact. The right to offer testimony is thus grounded in the Sixth Amendment even though it is not expressly described in so many words:
>
>> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

*Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)).

The right to present a defense, however, is not absolute. *Id.* Relevant here, the *Taylor* Court noted that the right to present a defense is subject to "rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case." *Id.* at 411. Otherwise, the "trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony." *Id.* The *Taylor* Court explicitly recognized the purposes served by rules concerning timing of notices of alibis, given the ease with which an alibi defense can be fabricated, and that such discovery rules "serve the prosecution's interest in protecting itself against an eleventh-hour defense as well as the public interest in a full and truthful disclosure of critical facts." *Williams v. Curtin*, 613 F. App'x 461, 465 (6th Cir. 2015) (quoting *Taylor*, 484 U.S. at 411–12).

While the *Taylor* Court did not set forth a comprehensive standard to guide these types of claims, it did set forth the interests that would often arise and would need to be considered:

> [A] trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.
>
> A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony.
>
> The simplicity of compliance with the discovery rule is also relevant. As we have noted, the Compulsory Process Clause cannot be invoked without the prior planning and affirmative conduct of the defendant. Lawyers are accustomed to meeting deadlines. Routine preparation involves location and interrogation of potential witnesses and the serving of subpoenas on those whose testimony will be offered at trial. The burden of identifying them in advance of trial adds little to these routine demands of trial preparation.

*Id.* at 414–16 (footnotes and citations omitted). Notably, the *Taylor* Court did not hold that the availability of alternative sanctions would preclude suppression of alibi witness testimony. Instead, the Court upheld preclusion of alibi witnesses even after recognizing that "a less drastic sanction is always available." *Id.* at 413. As the Sixth Circuit has noted, "*Taylor*'s holding, properly understood, teaches that various factors are potentially relevant in evaluating the appropriateness of the preclusion sanction; it does not prescribe a comprehensive standard, and it does not mandate interest-balancing." *Williams*, 613 F. App'x at 468.

Petitioner first faults the court of appeals for applying "more of a facial challenge" instead of "looking at this case *in particular* to determine the effects of exclusion and the possibility of a less severe sanction." (Mem. Supp. § 2254 Pet., ECF No. 8, PageID.91.) Petitioner argues that "while the notice requirement may impose 'reasonable conditions,' that is not the test clearly articulated by the Supreme Court for excluding defense evidence as a discovery violation." (*Id.*)

15

As set forth above, however, the *Taylor* Court did not set forth a comprehensive test. Rather, as the Sixth Circuit has noted, "because *Taylor*'s 'rule' is a general one, state courts whose rulings are reviewed under AEDPA as being contrary to or unreasonable applications of such rule, are entitled to 'more leeway . . . in reaching outcomes in case-by-case determinations." *Williams*, 613 F. App'x at 468 (quoting *Harrington*, 562 U.S. at 101). Likewise, the Supreme Court has never held that "it is unconstitutional to enforce such a [notice] rule unless a case-by-case balancing of interests weighs in favor of enforcement." *Nevada v. Jackson*, 569 U.S. 505, 510 (2012). Thus, Petitioner's suggestion that the court of appeals' decision is contrary to clearly established federal law is misplaced.

Petitioner also contends that, "[e]ven assuming the Michigan Court of Appeals understood the proper test, it unreasonably applied that test to the facts of this case." (Mem. Supp. § 2254 Pet., ECF No. 8, PageID.91.) Petitioner cites *Taylor* for the proposition that "exclusion is not proportionate unless noncompliance with the rule was 'willful and motivated by a desire to obtain a tactical advantage' or failure to exclude the evidence 'would perpetuate rather than limit the prejudice to the State *and* the harm to the adversary process.'" (*Id.* at 91–92 (citing *Taylor*, 484 U.S. at 413, 415 (emphasis added).) According to Petitioner, there was no evidence to suggest willful noncompliance, and "there were alternatives to exclusion easily available." (*Id.*, PageID.92.) Petitioner suggests that trial could have been adjourned "to permit the prosecution to interview the proposed witnesses." (*Id.*)

The Sixth Circuit addressed a similar situation in *Williams*. There, it was undisputed that there was no finding that the late alibi notice was "willful or deliberately designed to gain unfair tactical advantage." *Williams*, 613 F. App'x at 467. However, the late notice, at a minimum, bespoke "a lack of due diligence." *Id.* Moreover, "[t]he simplicity of compliance with the

discovery rule" was also relevant in denying Williams' claim for relief. *Id.* (quoting *Taylor*, 484 U.S. at 415).

*Taylor* and *Williams* counsel that a lack of evidence suggesting willful noncompliance does not automatically lead to a conclusion that exclusion of alibi witnesses should not occur. Throughout his habeas filings, Petitioner maintains that he told trial counsel about his alibi witnesses well in advance of trial and that counsel neglected to investigate those witnesses because of a fee dispute with Petitioner. Although the record contains a sworn declaration, prepared by Petitioner on December 10, 2018, that he informed counsel of his alibi witnesses "from the time [he] retained trial counsel," (ECF No. 8-6, PageID.131), he does not provide any evidence, in the form of letters or other communication with counsel, to support that assertion. Petitioner, therefore, fails to demonstrate that the court of appeals unreasonably applied *Taylor* to the facts of his case.[3]

Quite simply, the states courts' failure "to more explicitly consider alternative sanctions does not render their decision contrary to clearly established federal law." *Williams*, 613 F. App'x at 467. Here, the court of appeals' decision, although it did not explicitly address the various factors set forth in *Taylor*, rested on the consideration of Petitioner's failure to comply with state court rules regarding timing of notice for alibi witnesses, a factor that *Taylor* expressly said was relevant.

Upon review of the record, the Court concludes that it "does not reveal such an arbitrary enforcement of the preclusion sanction that all fairminded jurists would necessarily find it to be contrary to *Taylor* and therefore violative of [Petitioner's] Sixth Amendment right to present a defense." *Id.* at 468. Moreover, Petitioner has not demonstrated that the court of appeals'

---

[3] The Court addresses Petitioner's related claims of ineffective assistance of trial counsel regarding his alibi witnesses *infra* in Part IV.B.2.c.

conclusion is an unreasonable application of *Taylor* to the facts of his case. Accordingly, for the reasons set forth above, Petitioner is not entitled to relief with respect to habeas ground I.

**B.      Grounds II and III—Ineffective Assistance of Trial and Appellate Counsel**

As his second ground for relief, Petitioner raises numerous claims of ineffective assistance of trial counsel. (Pet., ECF No. 1, PageID.7.) In his third ground for relief, Petitioner alleges that appellate counsel rendered ineffective assistance. (*Id.*) Moreover, in his memorandum supporting his § 2254 petition, Petitioner contends that trial counsel was ineffective for failing to object to the prosecution's late amendment of the fourth-offense habitual offender notice. (Mem. Supp. § 2254 Pet., ECF No. 8, PageID.76.)

**1.      Standard of Review**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

18

determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable

argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised his numerous ineffective assistance claims on direct appeal and in his Rule 6.500 motion. The court of appeals addressed the claims raised on direct appeal under the following standard:

> To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objective standards of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *People v. Uphaus (On Remand)*, 278 Mich. App. 174, 185; 748 N.W.2d 899 (2008). A defendant also bears the burden of establishing the factual predicate [for] his claim. *People v. Hoag*, 460 Mich. 1, 6; 594 N.W.2d 57 (1999).

*Matthews*, 2017 WL 2988931, at *5. The trial court addressed the claims raised in Petitioner's Rule 6.500 motion under the following standard:

> "A claim of ineffective assistance of counsel" [is appropriately] []raised by a motion for a new trial or an evidentiary hearing. [*People v.*] *Ginther*, 390 Mich. 436, 443; 212 N.W.2d 922 (1973). The standard for determining whether a defendant was denied the effective assistance of counsel was explained by the Michigan Supreme Court in *People v. Pickens*, 446 Mich. 298; 521 N.W.2d 797 (1994). To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that there is a reasonable probability that, but for the deficiency, the factfinder would not have convicted the defendant. *Id.* at 312, relying on *Strickland v. Washington*, 466 U.S. 668, 687; 104 S. Ct. 2052, 2064 (1984); *see also People v. Stanaway*, 446 Mich. 643, 687–88; 521 N.W.2d 557 (1994). The defendant must overcome the presumption that, under the circumstances, the challenged action could be sound trial strategy. *People v. LaVearn*, 448 Mich. 207, 213; 528 N.W.2d 721 (1995).

(ECF No. 10-9, PageID.468.)

The cases cited by *Uphaus* identify *Strickland* as the source of the standard. *See People v. Toma*, 613 N.W.2d 694, 703 (Mich. 2000). Moreover, as noted above, *Pickens* identifies *Strickland*

20

as the source of the standard. Thus, there is no question that the state courts applied the correct standard.

The state courts' application of the correct standard eliminates the possibility that the resulting decisions are "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the state courts applied the correct standard, Petitioner can only overcome the deference afforded state court decisions if the determination regarding Petitioner's ineffective assistance claims is an unreasonable application of *Strickland* or if the state courts' resolutions were based on an unreasonable determination of the facts. 28 U.S.C. 2254(d). The

Court, therefore, will consider whether the state courts reasonably applied the standard for Petitioner's claims of ineffective assistance of counsel.

### 2.      Ineffective Assistance of Trial Counsel

#### a.      Failure to File Motion to Quash or Pursue Interlocutory Appeal

Petitioner first faults trial counsel for not filing a motion a quash or pursuing an interlocutory appeal after Petitioner's criminal proceedings were bound over to the circuit court.

Petitioner raised this claim on direct appeal, and the court of appeals rejected it, stating:

> Alternatively, [Petitioner] contends that his attorney provided ineffective assistance by failing to file a motion to quash the bindover or to seek an interlocutory appeal. This unpreserved claim of ineffective assistance is without merit because any efforts by counsel to challenge the bindover would have been futile. See *People v. Fonville*, 291 Mich. App. 363, 384; 804 N.W.2d 878 (2011). Kirkland testified at the preliminary examination that, on September 28, 2014, [Petitioner] approached Kirkland in a parking lot, pointed a gun at him, and told him to "run that shit." Kirkland was "a little petrified," and he threw his watch and glasses on the ground. [Petitioner] picked them up. Kirkland knew [Petitioner] and he identified [Petitioner] as the robber. From Kirkland's testimony, there was evidence of each element of armed robbery, as well as probable cause to believe that [Petitioner] committed the crime. *See* MCL 750.529; *People v. Henderson*, 282 Mich. App. 307, 312; 765 N.W.2d 619 (2009); *People v. Chambers*, 277 Mich. App. 1, 7; 742 N.W.2d 610 (2007). Given that there was sufficient evidence to support the bindover, defense counsel was not ineffective in failing to file a futile motion to quash or to pursue an interlocutory appeal. *Fonville*, 291 Mich. App. at 384.

*Matthews*, 2017 WL 2988931, at *4.

Petitioner has not briefed this claim of ineffective assistance of counsel in his memorandum supporting his § 2254 petition or his reply brief. Petitioner, therefore, has provided no evidence, much less clear and convincing evidence, to overcome the presumption of correctness afforded to the court of appeals' factual findings. *See* 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. Given Kirkland's testimony at the preliminary hearing, any motion to quash or interlocutory appeal would have been futile. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (stating that "[o]mitting meritless arguments is neither

22

professionally unreasonable nor prejudicial."). Petitioner fails to demonstrate that the court of appeals' rejection of this claim of ineffective assistance is contrary to, or an unreasonable application of, *Strickland*. Accordingly, he is not entitled to habeas relief with respect to this claim.

### b.   Failure to Challenge Validity of the Complaint

Next, Petitioner faults trial counsel for not challenging the complaint that initiated criminal proceedings. Petitioner raised this claim in his Standard 4 brief, and the court of appeals rejected it, stating:

> First, [Petitioner] argues that defense counsel was ineffective for failing to challenge the complaint. According to [Petitioner], there was no probable cause for the warrant because the warrant for his arrest was issued three days before the date on the complaint and an affidavit of probable cause. [Petitioner's] argument is factually unsupported. According to the documents in the lower court record, on October 13, 2014, a complaint against [Petitioner] was filed and an affidavit of probable cause was submitted. See MCR 6.101(A); MCR 6.102(B). On the same day, the district court issued a warrant for [Petitioner's] arrest.[2] See MCR 6.102(A). Based on the dates of the complaint, the affidavit, and the warrant, [Petitioner] has failed to prove the factual predicate for his claim, i.e., that a warrant was issued before probable cause was established via the complaint and affidavit. *See* MCR 6.102(B); *Hoag*, 460 Mich. at 6. In any event, [Petitioner] cannot show prejudice because any irregularity in the complaint or warrant would not have ultimately prevented the case from proceeding to trial. See *People v. Burrill*, 391 Mich. 124, 133; 214 N.W.2d 823 (1974).

> _____

> [2] On the complaint, there is a section which indicates that the warrant was "authorized" on October 10, 2014. It appears that this authorization represents the approval required by the prosecuting official under MCR 6.101(C). It is not an indication that the warrant was issued by the district court before being presented with the complaint or affidavit of probable cause. Rather, the warrant issued by the district court is a separate document, dated October 13, 2014.

*Matthews*, 2017 WL 2988931, at *5.

Petitioner has not briefed this claim of ineffective assistance of counsel in his memorandum supporting his § 2254 petition or his reply brief. Petitioner, therefore, has provided no evidence, much less clear and convincing evidence, to overcome the presumption of correctness afforded to

the court of appeals' factual findings. *See* 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. The record reflects that the affidavit of probable cause was sworn before a judicial officer on October 13, 2014. (ECF No. 10-10, PageID.610.) Although the warrant was authorized on October 10, 2014 (*id.* at 611), it was not issued until the affidavit of probable cause and complaint were submitted. Any argument otherwise by counsel would have been futile. *See Coley*, 706 F.3d at 752. Petitioner fails to demonstrate that the court of appeals' rejection of this claim of ineffective assistance is contrary to, or an unreasonable application of, *Strickland*. Accordingly, he is not entitled to habeas relief with respect to this claim.

### c.   Failure to Investigate and Provide Timely Alibi Notice, Move for Adjournment, and Communicate

Petitioner also faults counsel for failing to investigate and file a timely alibi notice, move for an adjournment, and communicate with Petitioner until a week prior to trial. Petitioner contends that these subclaims of ineffective assistance relate to trial counsel "fail[ing] to take steps to present [Petitioner's] alibi defense." (Mem. Supp. § 2254 Pet., ECF No. 8, PageID.93.) The Court, therefore, will consider them together.

Petitioner's claims were addressed both by the court of appeals on direct appeal and the trial court on post-conviction review. Specifically, the court of appeals rejected Petitioner's claims of ineffective assistance premised upon counsel's failure to communicate and failure to file a timely alibi notice, stating:

> Third, [Petitioner] argues that he was denied effective assistance of counsel because defense counsel failed to communicate with him until counsel visited [Petitioner] in jail the week before trial. Even assuming that the factual predicate of [Petitioner's] claim is true, [Petitioner] has not alleged any prejudice as a result of this deficient performance. Because prejudice is an element of an ineffective assistance of counsel claim, [*Uphaus (On Remand)*, 278 Mich. App. at 185], we reject this claim of ineffective assistance of counsel.

Fourth, [Petitioner] argues that defense counsel, after being informed of the alibi witnesses, failed to investigate the witnesses and to file a timely notice of alibi, thereby depriving defendant of a substantial defense. A defendant is entitled to have counsel prepare, investigate, and present all substantial defenses. *In re Ayres*, 239 Mich. App. 8, 22; 608 N.W.2d 132 (1999). However, "counsel cannot be found ineffective for failing to pursue information that his client neglected to tell him." *People v. McGhee*, 268 Mich. App. 600, 626; 709 N.W.2d 595 (2005). When a defendant claims that counsel was ineffective for failing to raise a defense, the defendant must show that he made a good-faith effort to avail himself of the right to present the defense and that the defense was substantial. *In re Ayres*, 239 Mich. App. at 22.

In this case, regardless of whether the alibi witnesses would have provided a substantial defense, it was not defense counsel's performance that prohibited the presentment of this defense. Rather, [Petitioner] failed to make a good-faith effort to avail himself of the right to present the alibi witnesses. *Id*. By his own admission, [Petitioner] had known of the witnesses in question since the date of the robbery: September 28, 2014. [Petitioner] was arrested in November 2014 and bound over for trial in December 2014. Yet, [Petitioner] waited approximately 11 months, until 4 days before trial, which was his third trial date, before he told defense counsel about the alibi witnesses. By that time, any notice of alibi would have been untimely. *See* MCL 768.20(1). Nevertheless, defense counsel did endeavor to speak with the witnesses and to introduce their testimony at trial. The trial court excluded the witnesses because a timely notice of alibi had not been filed; but, it was [Petitioner's] delayed disclosure of the witnesses that prohibited defense counsel from filing a timely notice of alibi. In these circumstances, [Petitioner] has not shown that counsel performed unreasonably or that, but for counsel's performance, there was a reasonable probability of a different outcome. *Uphaus (On Remand)*, 278 Mich. App. at 185.

*Matthews*, 2017 WL 2988931, at *5–6 (footnote omitted).

The trial court rejected Petitioner's claims that counsel failed to request an adjournment and failed to investigate the alibi witnesses, stating:

An alibi defense is governed by MCL 768.20(1), which states:

(1) If a defendant in a felony case proposed to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case, or at such other time as the court directs, file and serve upon the prosecuting attorney a notice in writing of his intention to claim that defense. The notice shall contain, as particularly as is known to the defendant or the defendant's attorney, the names of witnesses to be called in behalf of the defendant to establish that defense. The defendant's notice shall include specific

25

information as to the place at which the accused claims to have been at the time of the alleged offense.

Moreover, a defendant may move to include an additional alibi witness without following the above notice procedure when such a witness could not have been discovered with due diligence. MCL 768.20(3).

In this case, [Petitioner] claims to have had two alibi witnesses who were willing to testify on his behalf that he was at his mother's house when the crime took place. The first witness was [Petitioner's] mother Lisa Matthews. The second witness was Diana Babaan who [Petitioner] claims drove him to his mother's house that morning. [Petitioner] never filed the required notice of his intent to call any alibi witnesses but merely showed upon the day of trial with two witnesses claiming an alibi defense. Thus, [Petitioner's] only possible recourse would be that he could not discover the identity of these witnesses after due diligence pursuant to MCL 768.20(3). This argument must fail as [Petitioner] clearly knew the identity of both witnesses since the moment the crime occurred. [Petitioner] has not properly demonstrating any hardship in discovering the identity of the two witnesses. The trial court was within its discretion to prohibit these witnesses from testifying.

[Petitioner] claims that his counsel was ineffective for not moving for either an adjournment or continuance in order to file proper notice of alibi witnesses. The trial took place on November 16, 2015. Trial counsel stated on the record that he received a letter from [Petitioner] on September 27, 2015, indicating all of the defenses that [Petitioner] wished to use at trial, and this letter did not mention anything about an alibi defense or the two witnesses generally. Trial counsel further noted that he was not made aware of the existence of two alibi witnesses until three or four days before trial.

The decision "to call or question witnesses are presumed to be matters of trial strategy." *People v. Russell*, 297 Mich. App. 707, 716; 825 N.W.2d 623 (2012). The failure to call a witness will only be considered ineffective assistance of counsel "if it deprives the defendant of a substantial defense." *Id.* (quoting *People v. Dixon*, 263 Mich. App. 393, 398; 688 N.W.2d 308 (2004)). When the failure to file notice or move for an adjournment of an alibi witness is at issue, a trial counsel's performance falls below the reasonable professional norm when counsel was aware of the witness three months before trial. *People v. Pickens*, 446 Mich. App. 298, 327; 521 N.W.2d 797 (1994).

Trial counsel's theory of the case was to attack the credibility of the victim whom he believed fabricated the story to get back at [Petitioner] based on his personal animosity toward [Petitioner]. Trial counsel was not made aware of any alibi witnesses by [Petitioner], who had a duty to disclose such witnesses to his attorney, until days before trial. [Petitioner] is essentially claiming that he wished his attorney would have prepared an entirely new defense in mere days' time. Trial strategy was within trial counsel's discretion and his decision to stick with his well-prepared strategy instead of pivoting only days before trial cannot be said to fall below a

reasonable professional standard. Moreover, trial counsel, once made aware, was prepared to incorporate an alibi defense on the day of trial, but that defense was excluded by way of the court's determination, not due to any failure on trial counsel's part.

Trial counsel controlled the theory of the case, including the calling of witnesses, and [Petitioner] was not deprived of effective assistance of counsel for the failure to move for an adjournment to notice alibi witnesses when counsel became aware of such witnesses only days before trial. Additionally, [Petitioner] provided no good reason for failing to timely disclose the witnesses to his attorney, so his argument is rejected.

\* \* \*

[Petitioner] argues that trial counsel was ineffective for not discovering the identity of the two alibi witnesses earlier. [Petitioner] is attempting to blame his attorney for not discovering the identity of [Petitioner's] mother and the person who [Petitioner] was physically with on the day of the crime. What [Petitioner] fails to understand in this situation is that the burden is not entirely on his lawyer. [Petitioner] himself is the party to the lawsuit, not his lawyer, and he had the duty to disclose his intention to claim an alibi defense with that duty continuing throughout the duration of the lawsuit. MCL 768.20(3). "Counsel cannot be found ineffective for failing to pursue information that his client neglected to tell him." *People v. McGhee*, 268 Mich. App. 600, 626; 709 N.W.2d 595 (2005). [Petitioner] has provided no evidence that trial counsel was affirmatively aware of the alibi witnesses and neglected to act on that information.

Under Michigan law, a trial judge retains the discretion to determine []whether to grant a continuance instead of applying the preclusion sanction. *People v. Merritt*, 396 Mich. 67, 79; 238 N.W.2d 31 (1976). Appellate courts have given trial courts broad discretion in considering whether alibi evidence was correctly excluded. *Id.* at 79–80.

[Petitioner] argues that his attorney was ineffective for failing to discover the witnesses earlier when [Petitioner] knew of the witnesses since the case's inception. The witnesses were present on the day of trial and trial counsel informed the court of both their presence and their willingness to testify, but the court excluded the testimony due to [Petitioner's] failure to comply with the alibi witness notice procedures. [Petitioner] only has himself to blame for not disclosing the identity of the witnesses to his lawyer earlier.

(ECF No. 10-9, PageID.470–471.)

Petitioner offers no evidence, much less clear and convincing evidence, to overcome the

presumption of correctness afforded to the state courts' factual determinations. Throughout his

habeas filings, Petitioner maintains that he told trial counsel about his alibi witnesses well in advance of trial and that counsel neglected to investigate those witnesses because of a fee dispute with Petitioner. The record contains a sworn declaration, prepared by Petitioner on December 10, 2018, in which Petitioner states that he informed counsel of his alibi witnesses "from the time [he] retained trial counsel." (ECF No. 8-6, PageID.131.) Although Petitioner has included a letter he wrote to the trial court to complain about the lack of communication with counsel, the letter is notably silent with respect to any complaints that counsel was not investigating Petitioner's purported alibi witnesses. Instead, Petitioner merely asserted that Kirkland was lying and had animosity toward Petitioner because Petitioner was "having sexual relations with [Kirkland's] girlfriend." (*Id.*, PageID.130.) In any event, the timing of Petitioner's affidavit is suspect—he waited three years after he was convicted to sign it and submit it to the courts. Given the dearth of evidence to support Petitioner's assertion that he informed counsel of his purported alibi witnesses well before trial, the state courts reasonably determined that it was no one's fault but Petitioner's for the late disclosure, leading to the trial court's exclusion of alibi testimony from trial.

Moreover, Petitioner has not provided any evidence to overcome the court of appeals' conclusion that he had not demonstrated a reasonable probability of a different outcome had his alibi witnesses been permitted to testify at trial. At Petitioner's trial, the victim, William Kirkland, testified that on the night of the incident, he was walking to his car when Petitioner "came from the side of [Kirkland's] car with a gun." (Trial Tr. II, ECF No. 10-5, PageID.324.) Kirkland indicated that he knew Petitioner before the incident. (*Id.*) Petitioner told Kirkland to give "him [hi]s stuff, give him [his] money." (*Id.*) Kirkland testified that he told Petitioner that he did not have any money. (*Id.*) Kirkland threw his glasses and watch on the ground for Petitioner to take. (*Id.*) When asked if he had any problems with Petitioner before the incident, Kirkland answered in

the negative. (*Id.*, PageID.325.) He also addressed the prosecutor's question as to whether Petitioner had "been with the same woman" that Kirkland had been with. (*Id.*) Kirkland responded that he recalled that being mentioned at Petitioner's preliminary examination, but that he was not upset with Petitioner at all because Kirkland had other girlfriends and noted that there were "other women in the world." (*Id.*) Kirkland also testified that on the night of the robbery, he was wearing a white shirt, and Petitioner was wearing a black hoodie. (*Id.*)

On cross-examination, Petitioner's counsel asked Kirkland if he knew that Petitioner had been "fooling around" with the mother of Kirkland's four children. (*Id.*, PageID.329.) Counsel suggested that provided a motive for Kirkland to frame Petitioner for the robbery. (*Id.*) Kirkland vehemently responded that he was not framing Petitioner. (*Id.*, PageID.329–330.) Moreover, Detective Kelly Baldwin testified that Kirkland identified Petitioner as the suspect from a photo array. (Trial Tr. III, ECF No. 10-6, PageID.352.)

Petitioner included affidavits from both of his purported alibi witnesses as part of his direct appeal proceedings. Diana Babaan's affidavit is undated but is marked received by the court of appeals as of August 15, 2016. (ECF No. 8-7, PageID.133.) In her affidavit, Babaan stated that she was not contacted to testify. (*Id.*) Babaan said that she would have testified that on the morning of September 28, 2014, she drove Petitioner "from his girlfriend's residence where he was staying to the home of his mother." (*Id.*) Babaan was present during trial and was willing to testify. (*Id.*)

Petitioner's mother, Lisa Matthews, also drafted an affidavit. (ECF No. 8-14, PageID.147.) Her affidavit is dated August 5, 2016. (*Id.*) Matthews stated that on the morning of September 28, 2014, Petitioner was at her home "helping [her] with medicine and eating a meal." (*Id.*) Matthews averred that Petitioner arrived at her home between 8:00 a.m. and 8:30 a.m. and that she "saw a

car belonging to Diana Babaan outside [her] residence" when she opened the door to let Petitioner in. (*Id.*) Matthews was present during trial and was willing to testify. (*Id.*)

Given Kirkland's testimony and his identification of Petitioner from a photo array, fair-minded jurists could conclude that there is no reasonable probability that any alibi testimony would have changed the outcome of Petitioner's trial. *See Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013) (concluding that habeas petitioner could not show prejudice from counsel's failure to call an alibi witness where two eyewitnesses positively identified the petitioner as the perpetrator). Petitioner speculates that Kirkland had reason to frame Petitioner for the robbery, but there is no evidence in the record that supported that conclusion. Kirkland had no reason to lie about his identification of Petitioner, nor did Detective Baldwin have reason to lie that Kirkland had identified Petitioner as the suspect when shown a photo array. Conversely, Lisa Matthews, Petitioner's mother, would have had motive to absolve Petitioner by lying about Petitioner's whereabouts on the day of the robbery.

Furthermore, Matthews (and presumably Babaan) waited until almost a year after Petitioner was convicted to prepare and sign an affidavit. If Matthews and Babaan believed that Petitioner "had been wrongly convicted and was languishing in prison, why wait?" *Ashmon v. Davis*, 508 F. App'x 486, 488 (6th Cir. 2012). These affidavits, which were created after trial, are simply not sufficiently reliable to suggest that Babaan's and Matthews' testimony would have changed the outcome of Petitioner's trial. *See Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x at 528, 531–32 (11th Cir. 2009). Furthermore, there is no indication that either Babaan or Matthews ever went to law enforcement officials with this allegedly exculpatory information. Likewise, there is no indication that either of them ever tried to contact Petitioner's attorney well before trial with this information.

Like the timing of Petitioner's affidavit, the timing of Babaan's and Matthews' affidavits is suspect and do not lend themselves to a conclusion that the jury would have acquitted Petitioner had the trial court permitted these to individuals to provide testimony. Given Matthews' relationship to Petitioner, a jury could have reasonably concluded that she was not a credible alibi witness. *Cf. Stadler v. Berghuis*, 483 F. App'x 173, 176–77 (6th Cir. 2012) (concluding that trial counsel could have reasonably concluded that proposed alibi witnesses were not credible because they were related to the defendant). Given Kirkland's testimony, particularly his testimony about identifying Petitioner, this Court cannot conclude that Petitioner was prejudiced by counsel's purported failure to timely investigate and file a notice of alibi.

In sum, Petitioner has not demonstrated that the state courts' rejection of these ineffective assistance claims is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to this claim of ineffective assistance.

### d.        Denial of Counsel at Critical Stage

Next, Petitioner contends that he was denied counsel at a critical stage during criminal proceedings.

The denial of counsel during a critical stage of the proceeding amounts to a *per se* denial of the effective assistance of counsel. *See United States v. Cronic*, 466 U.S. 648 (1984). The court must reverse a criminal defendant's conviction "without any [specific] showing of prejudice [to defendant] when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n.25. "In other words, when counsel is totally absent during a critical stage of the proceedings, prejudice must be presumed." *Mitchell v. Mason*, 325 F.3d 732, 740 (6th Cir. 2003).

Petitioner has not briefed this claim of ineffective assistance, and so he fails to provide any explanation regarding at what critical stage he believes he was denied counsel. However, Petitioner

31

raised a denial of counsel at critical stage claim in his Standard 4 brief on direct appeal, and the

court of appeals rejected it, stating:

> Thus far in our analysis, [Petitioner's] complaints about his attorney's performance have implicated the *Strickland* test for analyzing a claim of ineffective assistance of counsel. However, in his Standard 4 brief, [Petitioner] also cites *Cronic*, which, unlike *Strickland*, involves a presumption of prejudice in certain rare situations, such as the denial of counsel at a critical stage of the proceedings. See *People v. Frazier*, 478 Mich. 231, 243; 733 N.W.2d 713 (2007). In particular, [Petitioner] argues that he was denied counsel at a critical stage of the proceedings because defense counsel filed a motion to withdraw and counsel did not appear to represent him on June 10, 2015, when he was arraigned on the bench warrant that was issued after he failed to appear for trial on April 13, 2015. However, although defense counsel had expressed a desire to withdraw from the case, no order to that effect was entered and the transcript for the June 10, 2015 arraignment indicates that defense counsel appeared on [Petitioner's] behalf. Because it is not apparent from the record that defense counsel failed to appear at the June 10, 2015 arraignment, we reject [Petitioner's] claim that he was denied counsel at a critical stage of the proceedings.[6] See *People v. Horn*, 279 Mich. App. 31, 38; 755 N.W.2d 212 (2008).
>
> _____
>
> [6] We note that, while the transcript lists defense counsel's appearance on behalf of defendant, defense counsel did not speak at the arraignment. But, even if defense counsel did not appear at the June 10, 2015 arraignment, [Petitioner's] *Cronic* argument is without merit. A defendant has the right to counsel during all critical stages of a criminal prosecution. *People v. Collins*, 298 Mich. App. 458, 470; 828 N.W.2d 392 (2012). Typically, in Michigan, an arraignment on a warrant is not considered a critical stage of the proceedings. *See People v. Green*, 260 Mich. App. 392, 399; 677 N.W.2d 363 (2004), *overruled on other grounds by People v. Antsey*, 476 Mich. 436 (2006); *People v. Horton*, 98 Mich. App. 62, 72; 296 N.W.2d 184 (1980). And, [Petitioner] has not shown anything that occurred at the June 10, 2015 arraignment that renders this arraignment in particular a critical stage of the proceedings. *See White v. Maryland*, 373 U.S. 59, 60; 83 S.Ct. 1050; 10 L.Ed.2d 193 (1963). At the arraignment, the trial court only asked [Petitioner] if there was a reason why he did not appear for trial and questions about his bond. [Petitioner] did not waive any defenses or compromise any rights, and the arraignment had no effect on the determination of [Petitioner's] guilt or innocence. *See Green*, 260 Mich. App. at 399; *People v. Killebrew*, 16 Mich. App. 624, 627; 168 N.W.2d 423 (1969). As such, the arraignment was not a critical stage in the proceedings for purposes of *Cronic*.

*Matthews*, 2017 WL 2988931, at *7 (fourth and fifth footnotes omitted).

The court of appeals' opinion makes clear that Petitioner believes a denial of counsel at his arraignment was a *per se* denial of counsel. The Sixth Amendment right to counsel does not attach until a prosecution is commenced, that is, until the initiation of adversary criminal proceedings by a formal charge, a preliminary hearing, an indictment, an information, or an arraignment. *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). "It is only at that time 'that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'" *United States v. Gouveia*, 467 U.S. 180, 189 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). Once the right to counsel attaches, "the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).

However, even if the right to counsel attaches at an arraignment, that does not automatically lead to a conclusion that "arraignment itself is a critical stage requiring the presence of counsel." *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 212 (2008). For example, the Supreme Court has concluded that arraignment in Alabama is a critical stage because there, if a defendant fails to raise certain defenses at that stage, such defenses are waived. *See Hamilton v. Alabama*, 368 U.S. 52 (1961). The *Hamilton* Court acknowledged, though, that "[a]rraignment has different consequences in the various jurisdictions." *Id.* at 54 n.4.

With respect to arraignments in Michigan, the Sixth Circuit has concluded that they are not critical stages of criminal proceedings:

> In Michigan the "preliminary examination has for its limited purpose only the determination by a magistrate whether there is probable cause to bind the defendant over for trial . . . " *People v. Zaleski*, 133 N.W.2d 175 (1965); *See People v. Podolski*, 52 N.W.2d 201, *cert. denied*, 344 U.S. 845 (1952). In light of the above

> principles, it cannot be said that Michigan's arraignment and preliminary examination proceedings, in and of themselves, constitute a critical stage of the proceedings. Nor were there any special circumstances in appellant's case which might suggest that the proceedings were critical; no plea or statement was in fact obtained from appellant at his arraignment and, aside from his right not to be held in custody absent probable cause, appellant neither lost nor waived any right or defense. The fact that appellant might have received some collateral benefit in the form of pretrial discovery had he not waived examination is immaterial. *See Wilson v. Harris, supra*; *United States ex rel. Cooper v. Reincke*, 333 F.2d 608 (2nd Cir.), *cert. denied*, 379 U.S. 909 (1964). Appellant's claim that his conviction is invalid because of the denial of the assistance of counsel at his arraignment proceedings is thus rejected.

*Lundberg v. Buchkoe*, 389 F.2d 154, 158 (6th Cir. 1968); *see also Van v. Jones*, 475 F.3d 292 (6th Cir. 2007) (reviewing the development of "critical stage" jurisprudence and validating the *Lundberg* analysis). The Sixth Circuit has concluded that *Lundberg* so clearly declares that arraignment is not a critical stage in Michigan that reasonable minds could not differ on the issue. *See Washington v. Chapman*, No. 19-2454, 2020 WL 3256835, at *3 (6th Cir. Apr. 24, 2020); *Sweet v. Howes*, No. 16-2247, 2017 WL 2385274, at *4 (6th Cir. June 1, 2017).

Here, the court of appeals correctly noted that Petitioner's attorney was listed as having appeared on Petitioner's behalf at the bench warrant arraignment, but that counsel did not speak during the arraignment. (ECF No. 10-3.) Regardless of whether counsel was present or not, Petitioner fails to identify any circumstance unique to his arraignment that requires a result different from *Lundberg*. At the bench warrant arraignment, the court asked Petitioner why he had not shown up for trial, remanded Petitioner to jail to await trial, and set his new bond at $500,000.00. (*Id.*, PageID.289.) The court also advised Petitioner that if counsel sought to withdraw from representing Petitioner, Petitioner could either apply for a court-appointed attorney or retain another attorney. (*Id.*, PageID.290.) Nothing suggests that Petitioner made a plea or statement or that he lost any right or defense at that arraignment.

In sum, Petitioner fails to demonstrate that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to habeas relief with respect to this claim.

### e.  Failure to Challenge Late Amendment of Habitual Offender Notice

In his memorandum supporting his § 2254 petition, Petitioner contends that trial counsel rendered ineffective assistance by failing to object to the prosecution's late amendment of the fourth-offense habitual offender notice, and by failing to ensure that Petitioner was sentenced based upon accurate information. (Mem. Supp. § 2254 Pet., ECF No. 8, PageID.76.) According to Petitioner, had counsel objected, he "would not have been sentenced by a judge under the erroneous belief that the minimum sentence had to be at least 25 years' imprisonment." (*Id.*, PageID.99.)

Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it, stating:

In his argument, [Petitioner] relies on MCL 769.13(1), which states:

1)  In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant *as provided under section 10, 11, 12 of this chapter*, by filing a written notice of his or her intent to do so within 21 days after the defendants' arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(Emphasis added). The only applicable section is MCL 769.12, the habitual fourth offender statute.

In *People v. Ellis*, 224 Mich. App. 752, 755; 569 N.W.2d (1997), the Court of Appeals dealt with a similar issue. In that case, the prosecutor promptly filed supplemental information to charge the defendant with being a habitual offender, second offense. *Id.* The issue then arose when the prosecutor subsequently attempted to amend the supplemental information, governed by MCL 769.13(1), to include two additional prior felonies that would enhance the sentencing to a habitual fourth offender. *Id.* The court held that amending the supplemental information in that manner was improper. *Id.*

[Petitioner's] claim is unlike the claim in *Ellis* and falls outside the purview of MCL 769.13. [Petitioner] was initially charged as being a habitual offender fourth offense based on his previous three felonies and the prosecutor's amendment did not change that status. The information amendment only concerned the additional two felonies, felony firearm and felon in possession of a firearm, and was not concerned with amending the supplemental fourth offender information. Thus, MCL 769.13 is inapplicable to [Petitioner's] current claim.

Instead, [Petitioner's] claim is governed by MCR 6.112(H), which reads as follows:

> Amendment of Information or Notice of Intent to Seek Enhanced Sentence. The court before, during, or after trial may permit the prosecutor to amend the information or the notice of intent to seek enhanced sentence unless the proposed amendment would unfairly surprise or prejudice the defendant. On motion, the court must strike unnecessary allegations from the information.

Notice to a defendant of a new, lesser included offense is inadequate where the charges are dissimilar, the information does not suggest the need to prepare such a defense, and notice to the defendant does not come until after the prosecutor has started to present evidence. *People v. Adams*, 202 Mich. App. 385, 392; 509 N.W.2d 530 (1993). The focus is on whether the defense must "adjust his trial strategy to encompass the newly added offense." *Id.* at 391.

[Petitioner] was charged with armed robbery and two additional counts of felony firearm and felon in possession of a firearm. The allegations were that [Petitioner] used a gun in the underlying armed robbery, which could support a finding of the two additional counts. The court granted the motion to add the new counts on March 27, 2015. The trial started on November 16, 2015. [Petitioner] had nearly eight months to prepare for the two additional counts arising from the same act, which was plenty of time for [Petitioner] to prepare a defense to the additional counts. Any claim that he was unfairly surprised or prejudiced must fail. Even if [Petitioner] had raised the issue under MCR 6.112(H), there is no indication that he would not have been convicted if defense counsel would have objected to the motion. The court was well within its discretion to permit the amendment of the information regardless of an objection from the defense.

* * *

[Petitioner] argues next that counsel failed to investigate the law concerning the amendment of the information. However, as explained above, the court properly granted the prosecutor's motion to amend the information to include two felony gun charges under MCR 6.112(H). Further research on the court rule would not have changed the outcome.

(ECF No. 10-9, PageID.468–469, 471–472.)

Petitioner contends that the trial court's decision was "based on an unreasonable determination of the facts" and, therefore, is not entitled to AEDPA deference. (Mem. Supp. § 2254 Pet., ECF No. 8, PageID.106.) Petitioner states that it is "unclear" how the trial court reached the conclusion that the prosecution's amendment did not concern the fourth-offense habitual offender notice when the "prosecution's motion was literally captioned as 'People's Motion to Add Additional Counts *and Notice of Amending Information to Add the 25 Year Mandatory Minimum Fourth Felony Offense Notice.*'" (*Id.*) Although the trial court's rejection of Petitioner's claim may have been reasonable had Petitioner taken issue with the prosecution's amendment of the information to add the two firearm felonies, the trial court apparently misunderstood Petitioner's claim for relief. Accordingly, because the trial court did not address the amendment of the habitual offender notice and counsel's failure to object to that portion of the amendment, there is no state court decision to which to defer, and so the Court conducts a *de novo* review of Petitioner's claim below.

Michigan law permits a criminal defendant's sentence to be enhanced based on the defendant's prior convictions. Of relevance here is § 769.12 of the Michigan Compiled Laws, which states in relevant part:

> (1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter[] as follows:
>
> > (a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.

> (b) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court, except as otherwise provided in this section or section 1 of chapter XI,[] may sentence the person to imprisonment for life or for a lesser term.

Mich. Comp. Laws § 769.12(1)(a)–(b) (footnotes omitted).

Michigan law, however, imposes notice requirements on prosecutors to protect a defendant's due process rights with respect to sentence enhancements. Those notice requirements provide, in relevant part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter,[] by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.
>
> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

Mich. Comp. Laws § 769.13(1)–(2) (footnote omitted).

In Petitioner's case, the record reflects that Petitioner waived his arraignment on December 16, 2014. (ECF No. 10-1, PageID.235.) The prosecution filed its initial information on December 23, 2014. (*Id.*) That information charged Petitioner with one count of robbery. (ECF No. 8-9, PageID.135.) The information also provided notice to Petitioner that the prosecution would be seeking a fourth-offense habitual offender enhancement if Petitioner were convicted of the armed robbery. (*Id.*) Petitioner was advised that the habitual offender notice was based upon his prior convictions for fleeing and eluding a police officer, carrying a concealed weapon, and being a

felon in possession of a firearm. (*Id.*) The notice also advised Petitioner that, if convicted, he faced a maximum term of life imprisonment. (*Id.*)

Because Petitioner waived his arraignment, the prosecution had until January 13, 2015, to file any habitual offender notice or amendment thereto. However, the record reflects that on March 4, 2015, the prosecution filed a motion to add additional counts and notice of amending information to add the 25-year mandatory minimum fourth felony offense notice. (ECF No. 10-1, PageID.236.) Counsel filed no objection to that motion. On March 27, 2015, the trial court held a hearing at which the prosecutor's motion to amend was granted. (*Id.*, PageID.237.) The amended information again charged Petitioner with one count of armed robbery. (ECF No. 8-13, PageID.146.) It also added two firearms charges—one count of being a felon in possession of a firearm and one count of felony-firearm. (*Id.*)

Notably, the amended information also indicated that, if convicted, Petitioner would now be subject to a 25-year mandatory minimum sentence as a fourth-offense habitual offender. (*Id.*) The prosecution advised Petitioner that the notice was premised upon his prior convictions for fleeing and eluding a police officer, carrying a concealed weapon, and possession of cocaine. (*Id.*) The amended information, therefore, replaced the prior felon in possession of a firearm conviction with the possession of cocaine conviction. In the "Penalty" section, the prosecution stated: "Life or a lesser term. The minimum sentence must be at least 25 years." (*Id.*)

In 1997, the Michigan Court of Appeals held that the prosecution may not "amend an otherwise timely supplemental information outside the period set forth in M.C.L. § 769.13(1) . . . to allege additional prior convictions." *See People v. Ellis*, 569 N.W.2d 917, 918 (Mich. Ct. App. 1997). In *Ellis*, the prosecutor filed a supplemental information charging Ellis with being a second-offense habituation offender. *Id.* Six weeks later, the prosecutor filed an amended supplemental

information "alleging two additional prior convictions, thus changing the supplemental information to habitual offender, fourth offense." *Id.* The court of appeals concluded that the trial court erred in denying Ellis's motion to quash the amended information because the amendment subjected Ellis "to a potential life sentence, rather than a seven-year sentence enhancement as in the original supplemental information." *Id.* at 919. In so concluding, the court of appeals held that an information "may be amended outside the statutory period only to the extent that the proposed amendment does not relate to the specific requirements of M.C.L. § 769.13 . . . i.e., the amendment may not relate to additional prior convictions not included in the timely filed supplemental information." *Id.* The court of appeals noted that "[t]o hold otherwise would be to permit prosecutors to avoid making the necessary 'prompt' determination regarding the level of supplementation, if any, they wish to pursue and would materially alter the 'potential consequences' to the accused of conviction and plea." *Id.*

The *Ellis* court distinguished its ruling from the court of appeals' prior ruling in *People v. Manning*, 415 N.W.2d 1 (Mich. Ct. App. 1987), *overruled in part on other grounds by People v. Bailey*, 762 N.W.2d 161 (Mich. 2009). In *Manning*, the prosecutor filed a supplemental felony information ten days after Manning's preliminary examination, charging Manning with being a fourth-offense habitual offender. *Id.* at 2. Two months later, the prosecutor filed an amended supplemental information because the original supplemental information "contained two felony convictions for which Manning had not been convicted. *Id.* The amended supplemental information was therefore filed to "include an accurate reflection of Manning's prior record." *Id.* The court of appeals held that the trial court did not err in denying Manning's motion to dismiss the amended supplemental information because Manning had already been provided notice of the potential penalties if convicted as a fourth-offense habitual offender. *Id.*

Subsequently, the Michigan Court of Appeals read *Ellis* and *Manning* together to conclude that "*Ellis* does not preclude the amendment of a timely sentence enhancement information to correct a technical defect where the amendment does not otherwise increase the potential sentence consequences." *People v. Hornsby*, 650 N.W.2d 700, 707 (2002), *abrogated in part on other grounds by People v. Jones*, 834 N.W.2d 485 (Mich. 2013). The *Hornsby* court noted that "a recognized difference exists between an amendment of a notice to seek sentence enhancement that attempts to impose more severe adverse consequences to a defendant and one that does not." *Id.* at 706–707; *see also People v. Broadnax*, No. 333205, 2018 WL 1733410, at *6 (Mich. Ct. App. Apr. 10, 2018) (citing *Hornsby* for the proposition that, "[g]enerally, the prosecution is not permitted to amend the information to seek a sentence enhancement for a habitual offender if the amendment would subject the defendant to increased sentencing consequences").

Notably, the court of appeals recently stated that, for purposes of the fourth-offense habitual offender statute, "[t]he possibility of a *discretionary maximum life* sentence under MCL 769.12(1)(b) is a vastly different consideration from the guarantee of a *mandatory minimum* 25-year sentence under MCL 769.12(1)(a)." *People v. Butterfield*, No. 356336, 2022 WL 2182207, at *4 n.6 (Mich. Ct. App. June 16, 2022). The court based that reasoning on the fact that while "a fourth-offense habitual offender under MCL 796.12(1)(b) faces the possibility of a maximum life sentence, the court's discretion with respect to the defendant's *minimum* sentence is limited by consideration of the sentencing guidelines range and the requirement of proportionality when departing from the guidelines." *Id.*

In Petitioner's case, there is no question that the prosecution sought to amend the information and fourth-offense habitual offender notice well after the 21 days for doing so expired. Moreover, there is no question that the amendment of the fourth-offense habitual offender notice

subjected Petitioner to increased sentencing consequences. Petitioner's sentencing guidelines, without consideration of the fourth-offense enhancement, called for 126 to 420 months of incarceration, i.e., 10 ½ years to 35 years. (ECF No. 13, PageID.1051.) Under the original notice, therefore, Petitioner would have faced a minimum of 10 ½ years (per his sentencing guidelines) to a maximum of life. The amended notice, however, constrained the trial court's consideration of the guidelines, essentially making Petitioner's sentencing guidelines 300 to 420 months (still with the possibility of a maximum of life imprisonment).

Petitioner's armed robbery conviction qualifies as a serious crime for the 25-year mandatory minimum set forth in Mich. Comp. Laws § 769.12(1)(a). *See People v. Johnson*, No. 349447, 2020 WL 6816512, at *4 (Mich. Ct. App. Nov. 19, 2020). His prior possession of cocaine offense qualified as a "listed prior felony" for purposes of that subsection as well. *See* Mich. Comp. Laws § 769.12(6)(a)(*ii*). Certainly, the prosecution had information regarding Petitioner's prior convictions at hand when it filed the original information and notice. However, the prosecution's motion to amend the information and the fourth-offense habitual notice provided no reasoning for the late filing. Instead, the motion primarily focused on the prosecution's desire to add the two additional firearms charges to the information. The prosecution mentioned the habitual offender notice in only one sentence, stating: "In addition, the Prosecution is putting Defense on notice that we will be amending the supplemental information to that of MCL 769.12 the 25 year mandatory minimum fourth felony offense." (ECF No. 8-10, PageID.137.) Although the trial court held a hearing on the prosecution's motion, the parties have not provided the Court with a transcript, if any, of that hearing. The record, therefore, is completely silent as to the reasoning for the prosecution's late amendment.

Under these circumstances, the Court can fathom no reason for counsel's failure to respond to the prosecution's motion to amend and challenge the late filing pursuant to the notice requirements and case law set forth above. Petitioner, therefore, has met his burden of demonstrating that counsel's failure to do so fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. As set forth above, however, a petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

"*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112). At sentencing, the trial court sentenced Petitioner to two years for felony-firearm, to be followed by concurrent sentences of 35 to 60 years for armed robbery and felon in in possession of a firearm. (ECF No. 10-7, PageID.416.) 35 years is the equivalent of 420 months, which, as noted above, was the upper limit of Petitioner's sentencing guidelines (notwithstanding the possibility of life imprisonment under the fourth-offense habitual notice offender).

The trial court provided no reasoning for imposing this sentence upon Petitioner. Perhaps the trial court believed that the nature of the offense and Petitioner's prior criminal history warranted a minimum sentence at the top of the guidelines that also equaled 10 years above the mandatory minimum. The trial court's discretion, however, was greatly constrained by that 25-year mandatory minimum, which essentially narrowed Petitioner's guidelines range from 126 to 420 months to 300 to 420 months.[4] Had counsel successfully challenged the prosecutor's late

---

[4] It simply cannot be disputed that the imposition of a mandatory minimum is of constitutional significance. As the Supreme Court explained in *Alleyne v. United States*, 570 U.S. 99 (2013), "[e]levating the low-end of a sentencing range heightens the loss of liberty associated with the crime: the defendant's 'expected punishment has increased as a result of the narrowed range' and 'the prosecution is empowered, by invoking the mandatory minimum, to require the judge to

amendment of the habitual offender notice, the 25-year mandatory minimum would not have applied. In light of the state court authority barring late amendments with such significant consequences, counsel's failure to object is inexplicable and operated to prejudice Petitioner.

In sum, Petitioner has demonstrated that counsel rendered ineffective assistance by failing to object to the prosecution's late motion to amend the fourth-offense habitual offender notice. Petitioner, therefore, has presented the rare case where habeas relief is warranted, and the Court will grant his § 2254 petition with respect to this claim of ineffective assistance of trial counsel.

### 3.     Ineffective Assistance of Appellate Counsel

In habeas ground III, Petitioner faults appellate counsel for not raising several of the ineffective assistance of trial counsel claims set forth above. (Mem. Supp. § 2254 Pet., ECF No. 8, PageID.107.) Specifically, Petitioner suggests that appellate counsel should have argued that trial counsel was ineffective for failing to investigate, failing to file a notice of alibi, and failing to move for an adjournment. (*Id.*)

Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it, stating:

Appellate counsel raised four separate arguments on appeal including the failure of the trial court to permit the alibi witnesses to testify, the jury's verdict was against the great weight of the evidence, there was insufficient evidence presented at the preliminary examination to bind defendant over for trial on a charge of armed robbery, the minimum sentence of 35 years was unreasonable, and *ineffective assistance of trial counsel*. [Petitioner] is plainly wrong in arguing that appellate counsel failed to raise the issue of ineffective trial counsel on appeal. In the unpublished opinion from the Court of Appeals denying [Petitioner's] initial appeal in this matter, the court addressed and rejected [Petitioner's] argument of ineffective assistance of trial counsel. Appellate counsel used his reasonable professional judgment and raised four arguments[,] coherent arguments, and the failure to raise every conceivable argument was not ineffective. Therefore, [Petitioner's] argument is rejected.

---

impose a higher punishment than he might wish.'" *Id*. at 113 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 522 (2000) (concurring opinion of Justice Thomas)).

(ECF No. 10-9, PageID.472 (footnote omitted).)

As an initial matter, the trial court's note that appellate counsel raised the issue of ineffective assistance of trial counsel on direct appeal is not entirely correct. The only ineffective assistance claim that appellate counsel raised was that trial counsel was ineffective for filing a motion to quash or seek an interlocutory appeal after the bindover. The other ineffective assistance claims that were raised on direct appeal were raised by Petitioner in his *pro se* Standard 4 brief. Moreover, Petitioner raised other ineffective assistance of trial counsel claims in his Rule 6.500 motion.

As discussed *supra*, the Court has concluded that Petitioner's claim that trial counsel was ineffective for failing to object to the prosecution's late amendment of the fourth-offense habitual offender notice has merit. Arguably, this issue was likely clearly stronger than the issues appellate counsel chose to present. *See Smith*, 528 U.S. at 289. However, a finding of ineffective assistance of appellate counsel would not entitle Petitioner to any further habeas relief and would be cumulative of his ineffective assistance of trial counsel claim.

Moreover, as thoroughly discussed *supra*, all of Petitioner's other ineffective assistance of trial counsel claims lack merit. Accordingly, Petitioner's "appellate counsel's failure to raise [any of those claims] on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."). Petitioner has not demonstrated that the trial court's rejection of his ineffective assistance of appellate counsel claim is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

## V.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

As set forth *supra*, the Court will grant Petitioner's § 2254 petition with respect to his claim that trial counsel was ineffective for failing to object to the prosecution's late amendment of the fourth-offense habitual offender notice. Reasonable jurists could find that this Court's assessment of this claim and the relief to be granted debatable. *See Slack*, 529 U.S. at 484. The Court, therefore, will grant a certificate of appealability with respect to this ground so that Petitioner may challenge any aspect of the relief granted. With respect to all other grounds for relief, the Court finds that reasonable jurists could not conclude that this Court's dismissal of such claims was debatable or

wrong. Therefore, the Court will deny Petitioner a certificate of appealability as to all other grounds for relief.

## <u>Conclusion</u>

For the reasons set forth above, the Court concludes that trial counsel was ineffective for failing to object to the prosecution's late motion to amend the fourth-offense habitual offender notice. The Court, therefore, will enter a judgment that grants Petitioner's § 2254 petition with respect to that ground. The judgment will deny Petitioner's § 2254 petition with respect to all other grounds. The judgment will also direct that Petitioner's sentences for armed robbery and felon in possession of a firearm be vacated, and the State will be directed to conduct a resentencing hearing, at which time Petitioner may object to the applicability of the 25-year mandatory minimum set forth in the late amendment of the fourth-offense habitual offender notice. The Court will also enter an order denying Petitioner's request for an evidentiary hearing (Pet., ECF No. 1, PageID.7), granting a certificate of appealability as to Petitioner's claim that counsel was ineffective for failing to object to the late motion to amend the fourth-offense habitual offender notice, and denying a certificate of appealability as to all other grounds for relief.

Dated:   __December 8, 2023__                    __/s/ Paul L. Maloney__
                                                  Paul L. Maloney
                                                  United States District Judge